UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| CAROLYN PIMENTAL,<br>*formerly known as* CAROLYN IGOE<br><br>Plaintiff,<br><br>-v-<br><br>WACHOVIA MORTGAGE CORPORATION<br>*formerly known as* FIRST UNION MORTGAGE<br>CORPORATION<br><br>Defendant | CIVIL ACTION NO.:<br>1:05-CV-11097 (WGY) |

**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO
DEFENDANT'S MOTION TO DISMISS**

Plaintiff Carolyn Pimental *formerly known as* Carolyn Igoe (hereinafter, "Pimental") files this *Memorandum* in *opposition* to Defendant's Motion To Dismiss.

### I.  INTRODUCTION:

This case arises out of a construction loan to Pimental, as borrower, from Defendant Wachovia Mortgage Corporation *formerly known as* First Union Mortgage Corporation ("Wachovia"), as lender. Pimental claims that Wachovia breached its contract with her, and was negligent, because it allowed loan proceeds to be advanced or disbursed to a Contractor for construction of a pre-fabricated or modular home on property located in Everett, Massachusetts. Pimental further claims that Wachovia's alleged breaches and malfeasance also amount to a violation of Massachusetts General Laws, c. 93A.

## II.     STATEMENT OF FACTS:

On or about May 23, 2001, Pimental entered into a contract with Champion Homes USA, which, at that time, was owned and operated by one Raymond J. Peveri, to facilitate construction of a new pre-fabricated or modular home on property located at 88-90 Madison Avenue, Everett, Middlesex County, Massachusetts ("the Property"). (*First Amended Complaint And Jury Claim* [the *"Amended Complaint"*], ¶ 4).

On or about July 30, 2001, Wachovia issued a commitment letter to Pimental (*"Commitment"*). (*Motion To Dismiss*, Exhibit A). The *Commitment* required Pimental to give Wachovia specific information as a condition precedent to disbursing monies.

> "Requests for disbursements must be accompanied by a statement by [Pimental] that [Pimental] believes the work in place has progressed to a point where disbursements as scheduled is proper, a list of mechanics, trades and suppliers that have performed the work to date and a statement signed by [Pimental] and [Champion Homes USA], that the construction project is 'on budget and on time.'"

(*Commitment* ¶ 17, p. 3). The *Commitment* further required that,

> "[Pimental] . . . give [Wachovia] at least 10 days notice prior to [Pimental's] desired disbursement date."

(*Commitment* ¶ 18, p. 3). Pimental did not, nor did Wachovia demand, require or ask that Pimental, satisfy each of the conditions precedent before Wachovia disbursed monies to Champion Homes USA, in June 2002, which is a disbursement that is central to this case. (See, Pimental's Affidavit, dated August 1, 2005, ¶¶ 5,6 [*"Affidavit"*], attached hereto as Exhibit A).

On or about August 16, 2001, Pimental executed a *Mortgage Deed* and *Construction*

2

*Rider to Fixed Rate Note and Mortgage ("Rider")* with Wachovia. *(Amended Complaint, ¶¶ 6, 7; see also id., Exhibit 3 and Exhibit 4).* Pursuant to the *Mortgage Deed,*

> "All notices given [Pimental] or [Wachovia] in connection with this Security Instrument must be in writing . . . . Any notice to [Wachovia] shall be given by delivering it or by mailing it by first class mail to [Wachovia's] address stated herein unless [Wachovia] has designated another address by notice to [Pimental]."

*Id.*, Exhibit 3, ¶ 15, p. 10. The *Rider* further states that,

> "[Pimental] agrees to give [Wachovia] 10 days notice before [Pimental] need[s] money to pay for construction."

Once again, Pimental did not, nor did Wachovia demand, require or ask that Pimental, satisfy the said condition precedent before Wachovia disbursed monies to Champion Homes USA in June 2002. (See, *Affidavit,* dated August 1, 2005, ¶¶ 7,8 attached hereto as Exhibit A).

Also on August 16, 2001, Pimental executed a *Construction Loan Agreement ("CLA")* (Motion To Dismiss, Exhibit B). The *CLA* states, in part, that,

> All instruments (collectively, "the Basic Instruments"), including but not limited to, the Note, the Security Instrument, the Personal Financial Statements and all other loan documents or instruments have been validly executed, are now binding on the parties thereto and in full force and effect . . . ."

*Id.,* Representations and Warranties, ¶ A, p. 1.

At all relevant times material hereto, the parties agreed that the construction completion date was no later than March 1, 2002. *(Amended Complaint,* Exhibit 4, ¶ 1). However, Champion Homes USA failed to complete construction by that date. On March 4, 2002, Pimental executed a *Loan Modification Agreement to Extend Construction Period* from

3

March 1, 2002 to June 1, 2002. *(Amended Complaint, ¶ 9, Exhibit 5)*. Once again, Champion Homes USA failed to complete construction by that extended date. On June 7, 2002, Pimental executed another *Loan Modification Agreement to Extend Construction Period* from March 1, 2002 to July 31, 2002. *(Amended Complaint, ¶ 10, Exhibit 6)*.

Under the terms of the instruments, Pimental's performance obligations under the loan, which included repayment of the principal, did not begin until the construction completion date occurred. *(Amended Complaint, Exhibit 4)* However, in the circumstances, the construction completion date was repeatedly delayed covering a period of March 1, 2002 to July 31, 2002. *(Id., Exhibit 5 and Exhibit 6)*.

At the time the latter *Loan Modification Agreement to Extend Construction Period* from March 1, 2002 to July 31, 2002 was executed, on June 7, 2002, Wachovia had only disbursed a small amount of funds. The following amounts had been paid to Champion Homes USA by Pimental through the loan proceeds and by way of private funds:

| | | |
|---|---|---|
| April 2, 2001 | Deposit | $ 5,000.00 |
| August 22, 2001 | Deposit | $ 20,700.00 |
| June 6, 2002 | Foundation | $ 15,400.00 |
| June 6, 2002 | Kitchen Cabinet Upgrading | $ 5,400.00 |
| | TOTAL: | $46,500.00 |

*(Amended Complaint, ¶ 8)*.

On or about June 15, 2002, Wachovia inspected the Property site and fraudulently determined that the construction process was ninety-percent (90%) complete even though

4

less than one-half of the pre-fabricated structure had been delivered to the Property. And, yet, despite the use of substandard materials and work performed in an un-workmanlike manner and below-industry standards for craftsmanship, Wachovia disbursed additional funds to Champion Homes USA in a sum of over one hundred and five thousand dollars (>$105,000.00) to Champion Homes USA even though Pimental never gave Wachovia any supporting information or notice, as a condition precedent to Wachovia's performance and as required in the *Commitment, Mortgage Deed,* and *Rider*, all of which are binding on Pimental and Wachovia and in full force and effect according to the terms of the *CLA*.

The evidence demonstrates that Wachovia acted in bad faith by wrongfully disbursing funds to Champion Homes USA for construction that was both incomplete and substandard in its' reckless effort to complete the loan in question. Wachovia had a pecuniary interest in disbursing a substantial percent of the construction loan funds since Pimental agreed to, "pay back all the money [Wachovia] . . . advanced, with interest, expenses, and legal fees." (*Amended Complaint*, Exhibit 4, ¶ 3).

As an aside, Pimental takes strong exception to Wachovia's characterizations that Pimental has engaged in some-type of party-shopping in this matter, which is a charge that Pimental adamantly denies. Pimental was forced to secure the services of an alternate contractor to finish construction of the dwelling and correct innumerable deficiencies in the work of Champion Homes USA, which failed to complete the work contracted and paid for by Pimental. Additionally, Pimental was caused to incur expenses in mitigation of these damages caused by the actions and inactions of Wachovia. Due to defendant Wachovia's

5

premature and erroneous disbursal of construction loan funds and the resultant delays caused thereby, Pimental was caused to incur substantial amounts of unnecessary interest and extension fees, and was caused to lose the benefit of an offer tendered prior to completion of the project. The potential buyer was unable to defer purchase during construction delays, resulting from the contractor's failure to complete the work contracted and paid for by Pimental.

### III. ARGUMENTS:

1. **AS MOVING PARTY, DEFENDANT HAS FAILED TO SATISFY ITS' BURDEN OF PROOF AND, CONSEQUENTLY, THE MOTION MUST BE DENIED.**

In support of its' motion to dismiss, Wachovia relies on matters outside the pleading including but not limited to the *Commitment* (Motion To Dismiss, Memorandum, p. 2-3, Exhibit A) and Request For Determination of Dischargeability Of Debt, April 23, 2004 ("Request"), United States Bankruptcy Court, Division of Massachusetts, Case No.: 04-10782-WC11, ¶¶11, 12 (Motion To Dismiss, Memorandum, p. 4, Exhibit C) "If, on a motion asserting [12 (b)] (6) to dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the Court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56 . . . ." Fed. R. Civ. P. 12 (b).

Fed. R. Civ. P. 56 requires that summary judgment be granted:

> "[I]f the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that *there is no genuine issue as to any material fact* and that the moving party is entitled to a judgment as a matter of law."

6

Fed. R. Civ. P. Rule 56(c) (emphasis added).

The moving party on a *Motion for Summary Judgment* bears the burden of establishing that there is no genuine issue as to any material fact in the case. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 153 (1970), and that it is entitled to judgment on the law applicable to the established facts. *United States v. J.B. Williams Co.*, 498 F.2d 414 (2nd Cir. 1974); *Community National Bank v. Dawes*, 369 Mass. 550, 553 (1976). This is true even though the moving party would have no burden if the case were to go to trial. *Attorney General v. Bailey*, 386 Mass. 367, *cert. denied*, 103 S.Ct. 301 (1982); *Hopkins v. F.W. Woolworth Co.*, 11 Mass.App.Ct. 703 (1981).

In deciding a *Motion for Summary Judgment*, the Trial Court must construe all presumptions, inferences and disputed facts against the moving party and in favor of the opposing party. *Coveney v. President and Trustees of College of Holy Cross*, 388 Mass. 16 (1983). All inferences drawn from affidavits and other materials must be viewed in a light most favorable to the party opposing the motion. *Hub Associates v. Goode*, 357 Mass. 449, 451 (1970). Furthermore, the moving party must affirmatively demonstrate that there is no genuine issue of material fact. *Lyons v. New Mass. Media, Inc.*, 390 Mass. 51 (1983). The existence of such a disputed factual issue precludes the entry of summary judgment. *Young v. Reed*, 6 Mass.App. 18 (1978). This is particularly true where, as here, even on the undisputed facts, reasonable persons could differ as to whether Wachovia owed any duty or responsibility to notify Pimental before disbursing monies when the agreement between the parties required Pimental to satisfy a

condition precedent before disbursement could be made, and which, in effect, would place Pimental on notice, in advance, of a pre-disbursement investigation of the Property and the actual disbursement, itself. It is important that the Court refrain from making premature factual determinations. Summary judgment cannot be granted because the Court finds that one version of the facts is more appealing than another, or because the Court feels that the opponent to summary judgment is unlikely to prevail at trial. *Attorney General v. Bailey*, 386 Mass. 367 (1982), cert. denied sub nom. *Bailey v. Bellotti*, 103 S.Ct. 301.

Failure of the moving party affirmatively to establish that there is no dispute as to a material fact will defeat the motion. *Mills v. Prudential Ins. Co. of America*, 1 Mass.App.Ct. 188 (1973). Thus, Wachovia's *Motion To Dismiss* must fail unless it can demonstrate the absence of any factual dispute.

The standard which the Court shall employee to determine Wachovia's *Motion To Dismiss* is that all inferences and allegations from the pleadings must be construed in a light most favorable to plaintiff. *Kilmartin v. Wainwright & Co.*, 580 F.Supp. 604 (D.C. Mass. 1984); *Harris v. United States*, 204 F.Supp. 228, affirmed 308 F.2d 573 (D.C. Mass. 1962); *United Shoe Workers of America v. LeDanne Footwear*, 83 F.Supp. 714 (D.C. Mass. 1949). Further, "when considering a motion for summary judgment, the court must resolve any dispute in facts in favor of the plaintiff." *Lavoie v. General Aerospace Maternals Co., Inc.*, 579 F.Supp. 298 (D.C. Mass. 1984); *Denney v. Venitron Corp.*, 559 F.Supp. 1081 (D.C. Mass. 1982).

2.  **THERE IS EXPRESS LANGUAGE IN THE AGREEMENTS BETWEEN THE PARTIES REQUIRING AFFIRMATIVE ACTIONS TO BE TAKEN BY PIMENTAL AS CONDITION PRECEDENT TO THE DISBURSEMENT OF LOAN PROCEEDS.**

The *Commitment* required Pimental to give Wachovia specific detailed information as a condition precedent to disbursement of monies. It also required Pimental to provide a minimum number of days notice before Pimental's desired disbursement date. Additionally, the *Mortgage Deed* that Pimental executed with Wachovia required that all notices between the parties be in writing and delivered to the other party in a specific manner. Like the *Commitment*, the *Rider,* which Pimental executed in conjunction with the *Mortgage Deed,* also required Pimental to provide a minimum number of days notice before Pimental's desired disbursement date.

Wachovia intentionally overlooked the expressed language in the agreements, which constitute conditions precedent to the disbursement of funds; conducted a faulty inspection of the Property; and wrongfully disbursed funds with the purpose of hastening Pimental's performance obligations, which had been placed on hold as a result of repeated delays with the construction completion date, under the loan. The actions taken by Wachovia, absent any action required to be initially taken by Pimental, constitute a breach of contract between the parties. As a result of the breach, Pimental was not afforded reasonable notice of the pre-disbursement inspection of the property, which she would have had if Wachovia complied with the express language of the contract by first receiving advanced notification and specific detailed information from Pimental including, but not limited to, a statement by Pimental that Pimental believes the work in place has progressed to a point where

disbursements as scheduled is proper, a list of mechanics, trades, and suppliers that have performed the work to date and a statement signed by Pimental and the home builder that the construction project is "on budget and on time."

In the circumstances, Wachovia owed a duty to Pimental not to disburse funds. Yet, despite that duty, Wachovia failed to properly inspect the Property and, subsequent thereto, improperly and negligently disbursed funds to Champion Homes USA. And, Pimental has, in numerous ways, been damaged thereby.

Moreover, Wachovia acted in bad faith when it failed to adequately inspect the Property and then prematurely and fraudulently disbursed construction loan funds, which, in the circumstances of this case, was an unfair and deceptive act under Massachusetts General Law, c. 93A. Wachovia had a pecuniary interest in disbursing the funds, and took advantage of a perceived, yet fallacious, opportunity to do the same. "Consumer Protection Act create[s] new substantive rights by making conduct unlawful which was not unlawful under common law or any prior statute." Commonwealth v De Cotis (1974) 366 Mass 234, 316 NE2d 748, 89 ALR3d 387. "Unfairness in ALM GL c 93A § 2 is determined from all circumstances." Martin v Factory Mut. Research Corp. (1988).

> "In Massachusetts, every contract implies good faith and fair dealing by the parties in its performance. That duty translates into an "implied term" or condition of the contractual arrangement. Good faith performance or enforcement of a contract emphasizes faithfulness to an agreed common purpose and consistency with the justified expectations of the other party. Good faith and fair dealing is the understanding between the parties that neither party shall do anything that will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract."

Tufankjian v. Rockland Trust Co., 57 Mass. App. Ct. 173, 782 N.E.2d 1 (2003). "Chapter

93A. 'General Laws c. 93A . . . <sup>HN3</sup> makes unlawful any 'unfair . . . acts or practices in the conduct of any trade or commerce.' . . . Conduct 'in disregard of known contractual arrangements' and intended to secure benefits for the breaching party constitutes an unfair act or practice for c. 93A purposes." *Anthony's Pier Four, Inc. v. HBC Assoc.*, 411 Mass. 451 (Mass., 1991).

### III.   CONCLUSION:

For all of the foregoing reasons, Plaintiff Carolyn Pimental *formerly known as* Carolyn Igoe respectfully prays that this Honorable Court *deny* the Motion To Dismiss.

FOR THE PLAINTIFF,
CAROLYN PIMENTAL

By her attorney:

John H. Molloy
BBO #: 600778
385 Broadway, Suite 402
Revere, MA   02151
Telephone:  781.284-9934
Facsimile:    781.284-5301

### REQUEST FOR ORAL ARGUMENT

Pursuant to *Local Rule 7.1*, Pimental requests an oral argument on the Motion.

John H. Molloy

## **CERTIFICATION**

This is to certify that on this 3rd day of August 2005, a copy of the foregoing was mailed, first class, postage prepaid to:

> Nicholas J. Rosenberg, Esq.
> Edwards & Angell
> 101 Federal Street
> Boston, MA  02110

/s/ John H. Molloy
John H. Molloy

EXHIBIT A

## AFFIDAVIT OF CAROLYN PIMENTAL

I, Carolyn Pimental, do hereby depose and state that:

1. I am the Plaintiff in Civil Action No.: 1:05-CV-11097 (WGY), of the United States District Court, District Of Massachusetts;

2. I contracted with the Defendant Wachovia Mortgage Corporation, as successor of First Union Mortgage Corporation, for a construction loan for property located at 88-90 Madison Avenue, in Everett, Massachusetts;

3. The loan was intended to be used for construction of a new pre-fabricated or modular home at the said property, which was being constructed by Champion Homes USA, which, at that time, was owned and operated by Raymond J. Peveri;

4. In June 2002, Wachovia Mortgage Corporation disbursed funds from that loan in the approximate sum of one hundred and five thousand dollars ($105,000.00);

5. At or before the time of that disbursement, I did not inform Wachovia Mortgage Corporation, or any of its' predecessors, orally or in writing, that I believed the work in place had progressed to a point where disbursements as scheduled was proper, nor did I furnish Wachovia Mortgage Corporation, or any of its' predecessors, with a list of mechanics, trades, and suppliers that had performed work; nor did I furnish Wachovia Mortgage Corporation, or any of its' predecessors, with a statement signed by me that the construction project was on budget and on time;

6. Neither Wachovia Mortgage Corporation, nor any of its' predecessors, ever demanded, required, or asked me to furnish any of the information in the preceding paragraph at or before the June 2002 disbursement;

7. I did not give Wachovia Mortgage Corporation, or any of its' predecessors, any written notice expressing my need for money to pay for construction, as required in the *Construction Rider to Fixed Rate Note and Mortgage;*

8. Neither Wachovia Mortgage Corporation, nor any of its' predecessors, ever demanded, requested, or asked me to furnish written notice expressing my

need for money to pay for construction, as required in the *Construction Rider to Fixed Rate Note and Mortgage.*

Signed under the pains and penalties of perjury, this ___ day of August, 2005.

*Carolyn Pimental*
Carolyn Pimental