UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CAROLYN PIMENTAL,                      )
f/k/a CAROLYN IGOE,                    )
                                       )
        Plaintiff,                     )
                                       )
        v.                             )  CIVIL ACTION
                                       )  NO. 05-11097-WGY
WACHOVIA MORTGAGE CORP.,               )
f/k/a FIRST UNION MORTGAGE CORP.,      )
                                       )
        Defendant.                     )
                                       )

MEMORANDUM AND ORDER

YOUNG, D.J.                                      January 30, 2006

## I.   **INTRODUCTION**

Carolyn Pimental's[1] ("Pimental") Complaint [Doc. No. 2]
charges that the defendant Wachovia Mortgage Corporation[2]
("Wachovia") breached its construction loan contract with her and
was negligent in its disbursement of loan funds to her
contractor. The complaint further alleges that Wachovia violated
Massachusetts General Laws, Chapter 93A by disbursing her loan
funds to her contractor without first ensuring that the

---

[1]Carolyn Pimental was formerly known as Carolyn Igoe.

[2]Wachovia Mortgage Corporation was formerly known as First
Union Mortgage Corporation.

contractor had satisfactorily completed the necessary work.

Wachovia has moved to dismiss on grounds that it had no duty to assure that the contractor had completed the work to Pimental's satisfaction. Wachovia claims that, although the terms of the mortgage permit the mortgagee to withhold disbursements to the contractor if the bank finds the work to be inadequate, this provision of the contract is solely for the protection of Wachovia's own interests.

## A. Procedural Posture

On May 19, 2005, Pimental filed an amended complaint [Doc. No. 2] against Wachovia in the Massachusetts Superior Court sitting in and for the County of Suffolk, alleging breach of contract, negligence, and violation of Massachusetts General Laws, Chapter 93A, Section 2(A). State Ct. Rec. [Doc. No. 2], Ex. 4 ("Amended Complaint") ("Compl.").[3] Pimental seeks an award

---

[3]Pimental originally filed a complaint in March of 2004 naming Raymond Peveri, the contractor, as the sole defendant. Def.'s Mem. in Supp. of Mot. to Dismiss [Doc. No. 4] ("Def.'s Mem.") at 4. Peveri filed for bankruptcy in April of 2004. Def.'s Mem., Ex. C. In March of 2005, Pimental filed this action, dropping Peveri as a defendant and naming Wachovia as the sole defendant, but never served Wachovia with the original complaint. The amended complaint was filed and served upon Wachovia in May of 2005. Def.'s Mem. at 4.

Pimental's underlying grievance is that the contractor performed substandard and incomplete work on her property. Wachovia was not a party to the contract between Pimental and Champion Homes USA ("Champion") and, therefore, had no duties under that contract.

2

of damages, "along with costs, interest and reasonable attorney's fees[,] and for such other and further relief as this Court deems just and proper." Compl. at 4. In connection with her Chapter 93A claim, Pimental seeks "double or treble the amount of actual damages due to defendant's bad faith and willful violation of [Chapter 93A]", in addition to actual damages, attorney's fees and costs. Compl. at 5. She also requests a jury trial. Compl. at 6.

On May 25, 2005, Wachovia filed a Notice of Removal [Doc. No. 1] in the United States District Court for the District of Massachusetts. On June 7, 2005, Wachovia filed a Motion to Dismiss all three claims under Federal Rule of Civil Procedure 12(b)(6), accompanied by a Memorandum in support of the motion. Mot. to Dismiss [Doc. No. 3]; Def.'s Mem. This Court, on July 12, 2005, set the hearing on the motion for September 14, 2005. See Notice of Hearing (July 12, 2005).

Pimental requested an extension of time to file her response to Wachovia's motion, and was granted an extension until August 3, 2005. See Assented to Mot. [Doc. No. 5]; Order of July 22, 2005. On August 4, 2005, Pimental filed her Opposition to the Motion to Dismiss [Doc. No. 6], accompanied by a Memorandum in Support of the Opposition [Doc. No. 7]. Wachovia moved for leave to file a reply to Pimental's opposition, which was both granted and filed on August 11, 2005. See Mot. for Leave to File Reply

3

[Doc. No. 8]; Order of Aug. 11, 2005. On August 12, 2005,
Wachovia withdrew its request for oral argument on its motion to
dismiss. See Letter from Nicholas J. Rosenberg (Aug. 12, 2005)
[Doc. No. 10].

## B.    Facts

For the purposes of this motion to dismiss, the facts
gleaned from the complaint are taken as true. Pimental purchased
property located at 88-90 Madison Avenue (also known as 84
Madison Avenue) in Everett, Massachusetts on August 16, 2001.
Compl. ¶¶ 4-5 & Ex. 2. That same day, Pimental secured a
mortgage in the amount of $260,100.00 against this property, with
First Union Mortgage Corporation ("First Union") -- the
predecessor corporation of Wachovia. Compl. ¶ 6 & Ex. 3. A
construction rider (the "Rider") accompanied the mortgage from
Pimental to First Union. See Compl. ¶ 7 & Ex. 4.

On May 23, 2001, Pimental entered into a contract with
Raymond Peveri, d/b/a Champion Homes USA, whereby Champion agreed
to construct a pre-fabricated home on Pimental's Madison Avenue
property and to accept payments according to a specified time and
work-completion schedule. Compl. ¶ 8 & Ex. 1. Pimental planned
to pay Champion partly with proceeds from the loan from First
Union and partly with private funds. Compl. ¶ 8.

Pimental and Wachovia entered into two modifications to the

4

loan agreement, extending the date upon which Pimental's construction was to be completed from the original date of March 1, 2002, first to June 1, 2002, then to July 31, 2002. Compl. ¶¶ 9-10 & Exs. 5, 6.

The construction loan contained a provision granting the mortgagee the right to inspect the property to ensure that the construction had progressed satisfactorily before the bank was obligated to disburse payments to the contractor. Compl., Ex. 4, at ¶ 2. On June 15, 2002, agents of Wachovia inspected the property pursuant to this clause. Compl. ¶ 12. Following this inspection, Wachovia determined that the construction project was ninety percent complete and issued $105,819.00 to Champion. Compl. ¶ 14. At the time of the inspection and disbursement of funds, however, only half of the modular home had even been delivered to the property site. Compl. ¶¶ 15-16. Furthermore, the work that had been completed was of substandard quality. Compl. ¶ 11. On June 25, 2002, Champion ceased work at the site -- prior to completing the work for which Pimental had contracted and paid. Compl. ¶ 13.

When Champion discontinued its work at Pimental's property, less than twenty-five percent of the work contracted for had been completed.[4]  Compl. ¶ 20. Pimental sought the services of

---

[4]Although Wachovia concedes, for purposes of its motion to dismiss, that less than twenty-five percent of the work was complete when Champion ceased its work, Def.'s Mem. at 2 n.1, its

5

another contractor to complete the construction and to correct
the deficiencies in Champion's work at an additional cost of
$130,000.00.  Compl. ¶ 22-23.  Pimental claims an additional loss
of $43,345.41 in unnecessary interest and extension fees incurred
due to Wachovia's disbursement.  Compl. ¶ 24.  In addition,
Wachovia's disbursement of funds to Champion caused her financial
difficulties that delayed the construction by a new contractor
and led to the loss of a potential buyer who was unable to
postpone purchase of Pimental's property until the new contractor
completed the job.  Compl. ¶ 25.

## C.   **Federal Jurisdiction**

This Court has jurisdiction and venue over this matter
pursuant to Title 28, Sections 1332 and 1391 of the U.S. Code,
respectively.  Diversity jurisdiction is proper, as Pimental is a
domiciliary of Massachusetts and Wachovia is a foreign entity
with its principle place of business in Florida.  Pimental claims
damages in excess of $75,000.00.

---

inspectors determined that ninety percent of the work had been
completed by June 15, 2002.  Compl. ¶ 14.  Thus, the Court notes
that the actual extent of completeness of the project is unclear.

## II. DISCUSSION

### A. Standard of Review

When considering Wachovia's motion to dismiss, all factual allegations in Pimental's Complaint are assumed to be true and all inferences drawn in Pimental's favor. Coyne v. City of Somerville, 770 F. Supp 740, 743 (D. Mass. 1991). "[D]ismissal is warranted only if 'it appears beyond doubt that the plaintiff can prove no set of facts in support of [her] claim which would entitle [her] to relief.'" Id. at 743 (quoting Conley v. Gibson, 335 U.S. 41, 45-46 (1957)); Wellesley Hills Realty Trust v. Mobil Oil Corp., 747 F. Supp. 93, 95 (D. Mass. 1990) (Caffrey, S.J.) (same). Pimental must put forth "factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable legal theory." Gooley v. Mobil Oil Corp., 851 F.2d 513, 515 (1st. Cir. 1988).

### B. Breach of Contract

Because there is no dispute between the parties as to the terms of the agreements or the parties' actions, Pimental's breach of contract claim can be decided as matter of law.

#### 1. Express Terms of the Contract

The parties agree that Wachovia's inspection of the subject property is a condition precedent to its disbursement of funds.

7

See Pl.'s Opp'n. to Def.'s Mot. to Dismiss [Doc. No. 6] ("Pl.'s Mem.") at 2-3; Def.'s Mem. at 5-6. They disagree, however, in their particularized understandings of the condition. Pimental asserts that Wachovia's receipt of "supporting information or notice" that construction was completed satisfactorily was a necessary pre-condition for disbursement of funds. Pl.'s Mem. at 5. Wachovia counters that the condition precedent granted Wachovia the discretion to exercise a power to inspect and withhold funds, but did not require it to do so. Def.'s Mem. at 7-8. Wachovia maintains that the inspection provision was solely for its own benefit and, as such, was freely waivable by Wachovia at any time. Id. at 7-8.

The contractual terms regarding disbursements specify that Wachovia's obligation to disburse funds is conditional upon Wachovia's satisfaction that the construction work completed has been adequate:

> Disbursements for the project are to be made at the discretion of the Lender, when construction of the improvements herein agreed to be constructed reach the stages of completion to be designated . . . [and] upon inspection in each instance by the Lender in accordance with the Construction Advance Schedule . . . .
> Disbursements can be withheld or refused by the Lender after inspection at any stage of construction, if the work required to be done has not been done to the satisfaction of the Lender. It is further agreed that the Lender may alter disbursements from the Schedule, at its discretion.
> Upon the making of each advance and as a condition to making the advance, Borrower will . . . deliver to Lender any written verified statements of Borrower and proofs of payment to contractor . . . as the Lender may

8

demand.

Def.'s Mem., Ex. B, ¶ 2.  The mortgage agreement provides that

> [a]dvances will be made from time to time as
> construction progresses for work "in place only", as
> determined by [Wachovia] based upon inspection of the
> progress of the work.  . . .  Requests for
> disbursements must be accompanied by a statement by the
> Borrower that the Borrower believes the work in place
> has progressed to a point where disbursement as
> scheduled is proper . . . .

Def.'s Mem., Ex. A, ¶ 17.

Pimental asks this Court to read these provisions as placing

an obligation upon Wachovia to seek certification from Pimental

that work had been completed and paid for.  See Pl.'s Mem. at 9-

11.  A more accurate reading, however, is that these provisions

grant Wachovia the authority to withhold loan funds until it is

satisfied that the work has been completed to an adequate extent

under the terms of the construction contract, but they do not

require Wachovia to do so before disbursement can be proper.

Indeed, the contractual language is permissive, rather than

requisite,[5] indicating that Wachovia may chose to forego some --

or all -- of these steps.  Furthermore, the loan agreement

clearly commits the decision to disburse funds to Wachovia alone:

"Disbursements . . . are to be made at the discretion of the

---

[5] E.g., Def.'s Mem., Ex. B, ¶ 2 ("Disbursements can be
withheld . . . if the work required to be done has not been done
to the satisfaction of the Lender.  . . .  Borrower will . . .
deliver to Lender any written verified statements . . . and
proofs of payment to contractor . . . as the Lender may demand."
(emphasis added)).

9

Lender . . . ."  Def.'s Mem., Ex. B, ¶ 2.

Nothing in the contract indicates that Wachovia's

inspections were to account for Pimental's interests.  On the

contrary, the commitment letter expressly states that the right

to inspect the property is for the sole benefit of Wachovia:

> Borrower expressly acknowledges that [Wachovia] will
> inspect but not approve the quality or completeness of
> the construction, and that [Wachovia] will complete its
> inspection solely for its own purposes and not for
> Borrower's benefit.  Borrower agrees that Borrower will
> not hold [Wachovia] responsible for its judgement
> concerning the amount and value of the work that has
> been completed.  Borrower agrees that Borrower will not
> hold [Wachovia] responsible concerning the quality or
> completeness of any construction.

Def.'s Mem., Ex. A, ¶ 18.  The Rider appended to Pimental's

mortgage to Wachovia contains similar language.  It reads in

part:

> [Wachovia's] sole purpose in inspecting the work is to
> determine the approximate amount and value of the work
> which has been done.  This is so that it can decide how
> much money to advance to me.
>       I understand that [Wachovia] is doing its
> inspection solely for themselves and not for me.  I
> agree that I will not hold them responsible for their
> judgment concerning the amount and value of the work
> that has been done.  I also will not hold them
> responsible concerning the quality or completeness of
> any construction.

Compl., Ex. 4, at ¶ 2.

The contractual language is unambiguous.  In suggesting that

these terms require Wachovia to conduct a thorough evaluation of

the contractor's work prior to disbursing funds, see Pl.'s Mem.

at 9-11, Pimental asks this Court to construe the contract in a

10

manner that is unreasonable and counter to its plain meaning. The provisions in the commitment letter and Rider to which Pimental refers in support of her assertion that the contract required Pimental to demand money before Wachovia could disburse it, see id., and required her to provide Wachovia with evidence that construction had been completed satisfactorily before disbursement, id. at 5, can only be read to provide protections to Wachovia, which Wachovia was free to employ -- or not employ -- at its own discretion.

Pimental's breach of contract claim is without merit because the actions she alleges constitute a breach were, in fact, exactly in accordance with the terms of the contract. The contract states that Wachovia does not intend to "approve the quality or completeness of the construction" through the inspections. Def.'s Mem., Ex. A, ¶ 18. Nor did Wachovia purport to make a precise evaluation of the value of work completed, as the inspections are "to determine the approximate amount and value of the work which has been done." Compl., Ex. 4, at ¶ 2 (emphasis added). These documents further state that Pimental agreed that Wachovia's judgements as to the completeness of the contractor's work and appropriateness of disbursement would be committed to Wachovia's discretion. By signing these agreements, Pimental relieved Wachovia of any responsibility to her with regard to the inspections and disbursement decisions. See

11

Compl., Ex. 4, at ¶ 2.

The express terms of such a loan are enforceable under Massachusetts law. See Blais v. Warren Five Cents Sav. Bank, 1993 Mass. App. Div. 213 (1993). Where a loan contract imposes a condition precedent for the benefit of the lender alone, the lender is at liberty to waive the conditions. Clark v. Rowe, 428 Mass. 339, 346 (1998); Blais, 1993 Mass. App. Div. at 213; see also F.D.I.C. v. Smith, 848 F.Supp. 1053, 1058 n.9 (D. Mass. 1994) (Tauro, C.J.) (applying Massachusetts law); F.D.I.C. v. Fordhman (In re Fordham), 130 B.R. 632, 642 (Bankr. D. Mass. 1991) (Queenan, B.J.) (same). This is especially true where, as here, the loan contract specifically states that the condition is solely for the benefit of the lender and freely alterable by it. See Blais, 1993 Mass. App. Div. at 213; Fordham, 130 B.R. at 648. Even absent express contractual language granting the lender authority to waive its rights to impose conditions, a lender is presumed to have the authority to waive conditions that exist for its sole benefit. Fordham, 130 B.R. at 642.

There is one potential point of distinction between the facts of this case and those of Blais and Fordham. In Blais, the lender disbursed funds directly to the borrower, and in Fordham, the disbursement was at the specific request of the borrower. Blais, 1993 Mass. App. Div. at 213; Fordham, 130 B.R. at 640. Here, Pimental alleges that Wachovia advanced funds to her

12

contractor, Champion, directly. Compl. ¶ 14. Even if Wachovia
disbursed the funds directly to Champion without Pimental's
knowledge, this cannot form the basis of a breach of contract
claim because the contract empowers Wachovia to make such
disbursements. Furthermore, neither the Blais nor the Fordham
decision indicates that these facts were crucial to the outcome
of those cases. The Blais decision indicates that the explicit
language of the loan agreement that allowed the lender to alter
the disbursement schedule at will was as important, or more
important, a factor supporting its decision. Blais, 1993 Mass.
App. Div. at 213. Such language is also in the contract between
Pimental and Wachovia.

Based on Pimental's allegations, there appears to be no
legal basis to find that Wachovia breached any express terms of
the construction loan contract between the parties.

2. Implied Covenant of Good Faith

Under Massachusetts law, good faith is an implied term of
all contracts. Kerrigan v. City of Boston, 361 Mass. 24, 33
(1972) (citing Clark v. State Street Trust Co., 270 Mass. 140,
152-53 (1930)); see also McAdams v. Massachusetts Mut. Life Ins.
Co., 391 F.3d 287, 301 (1st Cir. 2004) (applying Massachusetts
law). Wachovia's failure to act in good faith, therefore, could
form the basis of a breach of contract claim, even if Wachovia

13

fulfilled all the express terms of the contract. In loan agreements, the duty of good faith "require[s] that a bank be honest in its dealings with a borrower and not purposefully injure a borrower's right to obtain the benefits of the contractual relationship . . . ." Adams Co-operative Bank v. Greenberg (In re Greenberg), 212 B.R. 422, 429 (Bankr. D. Mass. 1997) (Boroff, B.J.); see, e.g., EIU Group, Inc. v. CitiBank Del., Inc., No. 00-CV-12565-WGY (D. Mass. 2005), Jury Verdict (Dec. 6, 2005) [Doc. No. 177] (refusing to enforce a straightforward promissory note evidently because one of the plaintiff's officers violated a fiduciary duty to the defendant, thus destroying the ability to repay). A bank's failure affirmatively to disclose information to a borrower generally will not constitute a breach of the covenant of good faith. See Greenberg, 212 B.R. at 429.

Pimental does not claim that the contract was entered into through coercion, fraud,[6] or other unfair or deceptive means. She does, however, allege that "Wachovia acted in bad faith by wrongfully disbursing funds . . . ." Pl.'s Mem. at 5. Pimental charges that Wachovia did so to advance its "pecuniary interest in disbursing a substantial percent of the construction loan funds . . . " since Pimental was obligated to pay interest,

---

[6]Because Pimental did not plead fraud with particularity, as required by Federal Rule of Civil Procedure 9(b), a fraud claim would be foreclosed to her at this point.

14

expenses, and fees associated with all money disbursed.  Id.

Pimental's allegation that Wachovia "reckless[ly]" disbursed funds, id., is speculative, and "[a] court need not accept unreasonable inferences based upon conjecture or speculation." Fordham, 130 B.R. at 644 (internal quotation marks omitted) (rejecting plaintiff-borrower's allegation that lender disbursed loan funds in bad faith where plaintiff failed to show motivation for doing so).  The charge that Wachovia failed to perform in good faith is also dubious because it is unlikely that a secured creditor would disburse loan funds in a reckless manner.  If Wachovia were knowingly to disburse funds in spite of its recognition that Champion's work was substandard and incomplete, it would counteract the very purpose of the Rider, which is to protect the bank's interest in not advancing funds in excess of the value of its collateral.  Had Wachovia not made the Rider a term of the loan, it would have advanced the full amount of the construction loan to Pimental at the closing, which would put her in no different a position from that which she currently occupies.  The fact that Wachovia appended the Rider to Pimental's mortgage indicates that Wachovia was protective of its own interest in disbursing funds to Pimental only in proportion to the value of the property.

Furthermore, the "bad faith" behavior Pimental alleges was behavior that was in accordance with the express terms of the

15

contract. The contract permits Wachovia to conduct inspections and withhold funds on the basis of such inspections, but does not require Wachovia to account for Pimental's interests in so doing. See Compl., Ex. 4, at ¶ 2. Pimental's bad faith charge goes to the terms of the negotiated contract, rather than to Wachovia's spirit of performance. This is essentially a complaint that, in retrospect, Pimental does not like certain terms of the contract to which she agreed. Since she freely contracted to these terms with Wachovia, there is no basis for her claim that Wachovia breached the implied covenant of good faith.

## B. Negligence

Pimental's negligence claim can stand only if the construction loan contract between the parties imposes duties upon Wachovia to protect the interests of Pimental in its disbursement of funds to her contractor. If the contract does impose such duties, there is the further question of whether Wachovia acted negligently in inspecting the property or disbursing the loan funds.

Lenders normally do not owe borrowers fiduciary duties. Greenberg, 212 B.R. at 428; Blais, 1993 Mass. App. Div. at 213; see also Clark, 428 Mass. at 346. A lender can, however, assume a duty of care to the borrower through contractual terms. Blais, 1993 Mass. App. Div. at 213. A fiduciary relationship also can

16

arise if a lender both knows that a borrower is placing her trust in it and accepts that trust.  See Blais, 1993 Mass. App. Div. at 213; Greenberg, 212 B.R. at 429.  Pimental does not make any claim that such a special fiduciary relationship arose between the parties, either contractually or through an unusual relationship of trust between her as borrower and Wachovia as lender.  Wachovia is not liable to Pimental for its inspection of her property and subsequent disbursement of loan funds because it owed her no duty of care.  See Smith, 848 F.Supp. at 1058.  Thus, there is no legal basis to Pimental's assertion that Wachovia should have protected her interests in its assessment of Champion's work at the site and subsequent payment of loan proceeds to Champion.  Without such a duty, her negligence claim must fail.

## C. Massachusetts General Laws, Chapter 93A

Pimental's third claim is that Wachovia violated Massachusetts General Laws, Chapter 93A, Section 2(a) in its dealings with her.  Compl. ¶¶ 32-37.  Section 2(a) declares unlawful "[u]nfair or deceptive acts or practices in the conduct of any trade or commerce . . . ." Mass. Gen. Laws ch. 93A, § 2(a).  The double or treble damages Pimental requests in her complaint, Compl. at 5, requires a further showing that "the use or employment of the . . . act or practice was a willful or

17

knowing violation of said section two." Mass. Gen. Laws ch. 93A, § 11.

This Court is asked to address whether Wachovia's disbursement of loan funds rightfully could be characterized as an "unfair or deceptive" act. Pimental alleges that the specific acts that form the basis of her Chapter 93A claim were Wachovia's "premature and erroneous disbursal of construction loan funds . . . done willfully and knowingly[,] . . . constitut[ing] unfair, unlawful and deceptive practices . . . ", Compl. ¶ 33, and "fail[ure] to adequately inspect the Property . . . ", Pl.'s Mem. at 10.

Pimental's Chapter 93A claim hinges upon her breach of contract and negligence claims; she alleges that Wachovia's "unfair or deceptive" practices were its "premature and erroneous disbursal of construction loan funds . . . ." Compl. ¶ 33. Wachovia's duties to Pimental are defined by the terms of the loan contract, which expressly commit the inspection of the property and the decision to disburse funds to the discretion of Wachovia without imposing a duty upon it to protect Pimental's interests. Since Pimental has failed to allege sustainable breach of contract or negligence claims, and the Chapter 93A claim is based upon the previous two claims, there is no basis for finding Wachovia liable under Chapter 93A. See Egan v. Athol Mem. Hosp., 971 F. Supp. 37, 47 (D. Mass. 1997) (Gorton, J.)

18

(holding that where there was no evidence of the claimed underlying violation, and where there were "no unique arguments related to [the] Chapter 93A claim", defendant was entitled to summary judgment on plaintiff's Chapter 93A claim).

A practice may be a violation of Massachusetts General Laws, Chapter 93A "if [an act or practice] may reasonably be found to have caused a person to act differently than she otherwise might have." Hogen v. Riemer, 35 Mass. App. Div. 360, 365 (1993). Thus, Pimental's Chapter 93A claim might be sustainable if Wachovia's actions in entering into the contract were found to be unfair or deceptive. Pimental does not make such an allegation in her complaint, however, nor is there any evidence in the record indicating that she would have such a claim.

## III. CONCLUSION

This Court dismisses all three counts against Wachovia. Pimental became fully responsible for the full loan amount of $260,100.00 when the parties closed the loan. The Rider served as a limitation upon Wachovia's obligations to disburse the full amount on the day of closing and was executed for the sole benefit of Wachovia. The Rider did not create rights in Pimental that would allow her to sustain her claims.

19

## A. Breach of Contract

The terms of the loan contract between the parties that permitted Wachovia to condition its disbursement of funds on the satisfactory results of the lender's inspection of the construction at the site were for the benefit of Wachovia alone. As such, Wachovia was free to waive the condition and disburse the full loan amount without establishing any particular level of completeness of the construction. Because it was acting within its discretion, Wachovia did not breach its contract with Pimental when it disbursed her loan funds. Furthermore, Pimental does not allege any facts that would lead this Court to suspect that Wachovia performed its inspection of the property or disbursement of loan funds in bad faith.

## B. Negligence

Since lenders owe no fiduciary duties to borrowers (absent particular arrangements to the contrary), Wachovia was under no obligation to ensure that Pimental's interests were protected when it decided to disburse the funds to Champion. Wachovia owed no such duty to Pimental, and her negligence claim is without merit.

20

### C.  **Massachusetts General Laws, Chapter 93A**

Pimental's Massachusetts General Laws, Chapter 93A, Section 2(a) claim must fail, because Pimental has alleged no facts indicating that Wachovia engaged in unfair or deceptive practices.  Insofar as the Chapter 93A claim depends upon a breach of a contractual or common law duty to Pimental, of which there are none sufficiently alleged, it, too, is unsustainable.

Accordingly, Wachovia's Motion to Dismiss [Doc. No.3] is ALLOWED, and judgement shall enter in its favor.

SO ORDERED.

William L. Young

WILLIAM G. YOUNG
DISTRICT JUDGE

21